Gabriel Del Virginia, Esq.
LAW OFFICES OF GABRIEL DEL VIRGINIA
30 Wall Street, 12th Floor
New York, New York 10005
Telephone: 212-371-5478
Facsimile: 212-371-0460
Email: gabriel.delvirginia@verizon.net

Hearing Date: February 20, 2019
Hearing Time: 2:00 p.m.

*Proposed Attorneys for the Debtor
and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
**In re**

**EDWARD M. YAMBO MD, PC,**                    **Chapter 11**


                    **Debtor.**                    **Case No. 18-74496 (AST)**

--------------------------------------------------------------X

**NOTICE OF HEARING TO CONSIDER DEBTOR'S MOTION FOR ORDER,
PURSUANT TO SECTIONS 105(a), 363(b), (f) AND (m) AND 365 OF THE
BANKRUPTCY CODE AND RULES 6004 AND 6006 OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE: (I) APPROVING THE SALE OF
CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS,
CLAIMS AND ENCUMBRANCES AND APPROVING THE ASSOCIATED
ASSET PURCHASE AGREEMENT; (II) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF THE DEBTOR'S NON-RESIDENTIAL REAL
<u>PROPERTY LEASE; AND, (III) GRANTING RELATED RELIEF</u>**

        **PLEASE TAKE NOTICE THAT** a hearing will be held before the

Honorable Alan S. Trust, United States Bankruptcy Judge, on February 20, 2019 at

2:00 p.m. at the United States Bankruptcy Court for the Eastern District of New

York, Alfonse D'Amato Federal Courthouse, 290 Federal Plaza, Room 690, Central

Islip, New York 11722, or as soon thereafter as counsel may be heard, to consider the

Debtor's motion (the "<u>Sale Motion</u>") for the entry of an order (the "<u>Sale Order</u>"),

pursuant to sections 105(a), 363(b), (f) and (m), and 365 of title 11 of the

United States Code §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"): (i) authorizing and approving the sale (the "<u>Sale</u>") of certain of the Debtor's assets, specifically the "Assets" described in the proposed Asset Purchase Agreement annexed hereto (the "<u>Assets</u>"), to Caremed Primary and Urgent Care, P.C. (the "<u>Buyer</u>"), free and clear of all liens, claims and encumbrances and approving that certain Agreement of Purchase and Sale of Medical Practice Assets (the "<u>APA</u>") executed in connection therewith; (ii) authorizing and approving the assumption and assignment of the Debtor's interest in its lease of non-residential real property (the "<u>Lease</u>") pursuant to § 365 of the Bankruptcy Code; and, (iii) granting related relief;

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Sale Motion may be adjourned from time to time, without further written notice to any party;

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the relief sought in the Sale Motion must be made in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York, with a hard copy delivered to Chambers and served upon: (i) counsel to the Debtor, the Law Offices of Gabriel Del Virginia, 30 Wall Street, 12th Floor, New York, New York 10005, Attn: Gabriel Del Virginia, Esq.; (ii) the Offices of the United States Trustee for the Eastern District of New York, U.S. Federal Office Building, 201 Varick Street, Room

1006, New York, New York 10014; and (iii) parties having filed notices of appearance in this chapter 11 case so as to be received no later than 4:00 p.m. on February 13, 2019. Responses not timely filed and served may not be considered by the Court.

PLEASE TAKE FURTHER NOTICE that if no responses are timely filed and served, the Bankruptcy Court may grant the relief requested in the Sale Motion without further notice to any party.

Dated: New York, New York
       January 23, 2019

<div style="margin-left:40%">

**Law Offices of Gabriel Del Virginia**
*Proposed Counsel for the Debtor*

By:___ */s/ Gabriel Del Virginia*_____
        Gabriel Del Virginia
        30 Wall Street, 12th Floor
        New York, New York 10005
        Telephone: 212-371-5478
        Facsimile: 212-371-0460
        Email: gabriel.delvirginia@verizon.net

</div>

Gabriel Del Virginia, Esq.            Hearing Date: February 20, 2019
LAW OFFICES OF GABRIEL DEL VIRGINIA   Hearing Time: 2:00 p.m.
30 Wall Street, 12th Floor
New York, New York 10005
Telephone: 212-371-5478
Facsimile: 212-371-0460
Email: gabriel.delvirginia@verizon.net

*Proposed Attorneys for the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
**In re**

**EDWARD M. YAMBO MD, PC,**          **Chapter 11**

           **Debtor.**          **Case No. 18-74496 (AST)**
--------------------------------------------------------X

**DEBTOR'S MOTION FOR ORDER, PURSUANT TO SECTIONS 105(a),
363(b), (f) AND (m) AND 365 OF THE BANKRUPTCY CODE AND RULES
6004 AND 6006 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE: (I) APPROVING THE SALE OF CERTAIN ASSETS OF THE
DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES AND APPROVING THE ASSOCIATED ASSET
PURCHASE AGREEMENT; (II) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF THE DEBTOR'S NON-RESIDENTIAL REAL PROPERTY
LEASE; AND, (III) GRANTING RELATED RELIEF**

To:    **THE HONORABLE ALAN S. TRUST
UNITED STATES BANKRUPTCY JUDGE**

    Edward M. Yambo MD, PC, the debtor and debtor in possession (the "Debtor"

or "Seller"), by and through its counsel, the Law Offices of Gabriel Del Virginia,

as and for its motion (the "Sale Motion") seeking entry of an order (the "Sale

Order"), pursuant to sections 105(a), 363(b), (f) and (m), and 365 of title 11 of

the United States Code §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 6004

and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing and approving the sale (the "Sale") of certain of the Debtor's assets, specifically the "Assets" described in the proposed Asset Purchase Agreement annexed hereto (the "Assets"), to Caremed Primary and Urgent Care, P.C. (the "Buyer"), free and clear of all liens, claims and encumbrances and approving that certain Agreement of Purchase and Sale of Medical Practice Assets (the "APA") executed in connection therewith; (ii) authorizing and approving the assumption and assignment of the Debtor's interest in its lease of non-residential real property (the "Lease") pursuant to § 365 of the Bankruptcy Code; and, (iii) granting related relief.  In support of the Sale Motion, the Debtor respectfully represents:

## JURISDICTION

1.    This Court has jurisdiction herein pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are §§ 105(a), 363(b) and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006.

## CASE BACKGROUND

2.    The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 3, 2018 (the "Petition Date").  The Debtor continues to manage its property as a debtor and debtor-in-possession.

3.    No trustee or examiner has been appointed in this Bankruptcy Case, and no official committee of unsecured creditors has been appointed.

4.     By Order dated August 21, 2018, the Court waived the requirement of a patient care ombudsman. [Docket No. 23].

5.     The Debtor is a New York Corporation providing medical services to the community. The Debtor operates from its premises located at 41 Brentwood Road, Bay Shore, New York 11706 (the "Premises").

6.     The Debtor filed for bankruptcy on an exigent basis to preserve a settlement agreement with the Internal Revenue Service (the "IRS").

## SUMMARY OF RELIEF SOUGHT

7.     The Debtor seeks the entry of an Order substantially in the form submitted herewith:

    a.     Approving the sale of the Assets free and clear of all liens, claims and encumbrances as set forth in, and pursuant to, the APA annexed hereto as **Exhibit B** to Caremed for the Purchase Price[1], pursuant to § 363 of the Bankruptcy Code; and

    b.     Authorizing the assumption and assignment of the Debtor's interest in the Lease to Caremed.

## TERMS OF SALE

8.     The significant terms of the Asset Purchase Agreement are as follows:

| Buyer | Caremed Primary and Urgent Care PC |
|---|---|
| **Assets** | (a) all of the patient lists maintained by the Seller and its employees at the Office;<br>(b) all of the electronic patient charts and records (the "Records") maintained by the Seller and its employees at the Office;<br>(c) the following telephone and facsimile numbers utilized by the Seller: Telephone: (631) 968-0800 and Fax: (631) 665-0816;<br>(d) all of the furniture, equipment and supplies owned |

---

[1] Capitalized terms not otherwise defined herein are ascribed the meaning provided in the APA.

| | |
|---|---|
| | by the Seller at the Office;<br>(e) the Lease; and<br>(f) all office-related software and transferable and applicable licenses, except medical practice license in the name of Seller, Good Will, Covenant not to compete, Supplies and instruments. |
| **Excluded Assets** | Buyer is not purchasing or assuming:<br>(a) any of the liabilities of the Seller;<br>(b) those items which are expressly excluded from the Assets as more specifically set forth in Exhibit "B" to the APA, if any; and<br>(c) the accounts receivable arising from services performed by the Seller and its employees and independent contractors prior to the Closing Date. |
| **Purchase Price** | As more fully set forth in paragraph 2 of the APA, Buyer will purchase the Asserts for Two-Hundred and Fifty Thousand Dollars ($250,000) payable as follows:<br>(a) Edwardo M. Yambo MD, PC - $215,000.00<br>• $75,000 Certified Check; and<br>• $140,000 to be paid in 35 monthly installments.<br>(b) PracticePro (Billing Company holding Electronic Patient Record) - $35,000 Certified Check. |
| **Assignment of the Seller's Lease** | Seller shall assign, and Buyer shall assume, the Lease. |
| **Sale Not Subject to Higher and Better Offers** | The sale of the Assets to the Buyer shall not be subject to higher and better offers. The Debtor has determined in its business judgment that the offer made by the Buyer is the highest and best offer likely to be obtained by a purchaser who will be capable of complying with all regulatory requirements for the purchase of the Assets. Further, the Debtor has actively worked to locate a purchaser since the Petition Date and the Buyer is the only potential purchaser who came forward with the ability both to finance the purchase of the Assets and obtain the necessary regulatory approvals to do so. |

| Seller's Representations and Warranties | The Seller hereby represents and warrants to the Buyer:<br>• Seller is the lawful owner of and in actual possession of the Assets.<br>• Seller has all requisite power and authority to enter into and consummate the APA and the transactions contemplated herein.<br>• Seller has good and marketable title to the Assets being sold and transferred hereunder and all of such Assets are free and clear of all liens, mortgages, pledges, security interests, conditional sale agreements, encumbrances and charges whatsoever, and no third-party person or entity has any ownership interest in or any rights of any kind in or to any of the Assets.<br>• There are no disputes ongoing or known between the Seller and any of its employees, independent contractors or agents and all compensation and fringe benefits owed by the Seller to its employees, independent contractors and/or agents have been paid by the Seller or will be paid by the Seller in full by the Closing Date or as soon as possible thereafter. Seller warrants that the employment contracts for current employees at Seller's Bayshore Office as of the Closing Date are attached as Exhibit "E" to the APA.<br>• The patient lists and Records being purchased and/or transferred under the APA are true and accurate and have not been copied, disclosed or otherwise revealed to any third parties as of the Closing Date, other than as required by law or regulation, and the Seller shall not maintain any such information or Records (or copies thereof) and has not and shall not encourage or otherwise assist any third party in doing so.<br>• As of the Closing Date, the equipment sold hereunder shall be in good working condition. |
|---|---|

| | |
|---|---|
| **Buyer's Representations and Warranties** | The Buyer hereby represents and warrants:<br>• Buyer has all requisite power and authority to enter into and consummate the APA.<br>• The APA is valid, binding, and legally enforceable against the Buyer in accordance with its terms.<br>• The execution and performance of the APA by the Buyer will not violate any provision of law, will not (with or without the giving of notice and/or the passage of time) conflict with or result in any breach of any of the terms or conditions of, or constitute a default under any indenture, mortgage, agreement or other instrument to which the Buyer is a party or by which the Buyer is bound. |
| **Closing Date** | The date upon which the sale and purchase of the Assets pursuant to the APA will be completed transferring legal ownership of those rights to the Buyer. |
| **Bankruptcy Court Approval** | The APA is the subject to the approval by the Bankruptcy Court on notice to all creditors and parties-in-interest. |

## EXTRAORDINARY PROVISIONS

9.      In accordance with the Guidelines, the following are "extraordinary

provisions" of the proposed Sale and the basis therefore:

| | |
|---|---|
| **Private Sale/No Competitive Bidding** | The Assets are being sold to the Buyer in a private sale and without an auction and, as such, shall not be subject to higher and better offers.  After extensively marketing the Assets since the Petition Date, and based upon its extensive knowledge of the industry and of the Debtor's business, the Assets, and its operations, the Debtor has determined in its business judgment that the offer made by the Buyer is the highest and best offer likely to be obtained for the Assets from any purchaser which will be capable of complying with all regulatory requirements for the purchase of the Assets.  The Buyer is the only potential purchaser who came forward with the ability to finance the purchase of the Assets. |

| | |
|---|---|
| **Use of Proceeds** | The Sale Proceeds shall be used by the Seller in compliance with the Bankruptcy Code and any orders of the Bankruptcy Court, including the payment of Chapter 11 administrative obligations. |
| **No Good Faith Deposit** | Due to the type of business, and the necessary approvals required of any potential purchaser, the Debtor had a very limited market in which to market the Assets.  As a result of the limited potential purchaser market, the Debtor was unable to obtain any higher or better offer from any other potential purchaser and, indeed, received no offer from any potential purchaser willing to provide a good faith deposit. |
| **Records Retention** | Pursuant to the APA, the Debtor is transferring certain books and records to the Buyer.  The Debtor will retain, or have reasonable access to, its books and records to enable it to continue to administer this case in compliance with its obligations under the Bankruptcy Code. |
| **No Successor Liability** | The Sale Order contemplates entry of certain findings as to successor liability. As set forth in additional detail herein, the sale of the Assets contemplates the transfer of the Assets free and clear of all liens, claims and encumbrances. As such, the findings set forth in the Sale Order comply with applicable principles of sales free and clear of claims pursuant to section 363(f) of the Bankruptcy Code.  Additionally, the notice of the hearing on this Sale Motion provides specific notice to all recipients entitled to notice that the sale is free and clear of all liens, claims and encumbrances including claims pursuant to any successor or successor in interest liability theory. |
| **Waiver of 14-day stay provided under Bankruptcy Rule 6004(h)** | The Debtor is requesting that the Court waive the 14-day stay provided under Bankruptcy Rule 6004(h). |

# BASIS FOR RELIEF

## A. Debtor's Sale is an Exercise of the Debtor's Sound Business Judgment, in the Best Interests of the Debtor and meets the fairness standard to an insider

10.      The sale of the Assets is based upon the sound business judgment of the Debtor.  *See, e.g., In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp.* (In re Lionel Corp.), 772 F.2d 1063, 1071 (2d Cir. 1983*); In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). *See also*, *Official Comm. of Sub. Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993), *quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy). Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Additionally, section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

11.      It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the

8

debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). The burden of rebutting the presumption that a debtor has acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company, once it has been established, falls upon parties opposing the proposed exercise of a debtor's business judgment. *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

12.     Once a court is satisfied that there is a sound business judgment for the proposed sale, the court must then determine whether: (i) the debtor has provided interested parties with  adequate and reasonable notice; (ii) the sale price is fair and reasonable; and (iii) the purchaser is  proceeding in good faith. *In re Betty Owens Sch.*, 1997 U.S. Dist. Lexis 5877, *12 (S.D.N.Y. 1997) (*citing In re Delaware & Hudson Ry.*, 124 B.R. 169, 176 (D. Del. 1991)).

13.     In the instant matter, the Debtor believes ample business justification exists to approve the proposed sale of the Assets. The Debtor, with the assistance of its professionals, has been marketing the Assets since the Petition Date. The Buyer came forward with the highest and best offer for the Assets as well as the ability to continue operations so as to provide uninterrupted service to existing patients.  The Buyer also has the financial wherewithal to finance the transaction and the ability to obtain the necessary regulatory approvals in order to continue operations.

14.     The Debtor has proposed the sale of the Assets after thorough consideration of viable alternatives.  Ultimately, the Debtor has concluded that the sale to the Buyer is in the best interests of the creditors of the estate as well as the patients served.  Accordingly, and for all the foregoing reasons, the Debtor submits that its decision and agreement to sell the Assets pursuant to the terms of the APA is based on its sound business judgment and is in the best interests of its estate and its creditors.

**B.     The Buyer is a Good Faith Buyer and is Entitled to the Protection of Section 363(m) of the Bankruptcy Code**

15.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

16.     Although the Bankruptcy Code does not define "good faith," the Second Circuit held in *Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111  F.3d 269 (2d Cir. 1997) that:

> The 'good faith' component of the test under § 363(m) speaks to the equity of the [bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at the judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

111 F.3d at 276.

17.     The APA has been negotiated at arm's length and in good faith by the Debtor and the Buyer.  Moreover, the executed APA reflects a give-and-take and negotiated compromises by both sides.  Accordingly, the Buyer is a good faith purchaser entitled to the protection afforded by section 363(m) of the Bankruptcy Code.

**C.      The Assumption and Assignment of the Lease is a Proper Exercise of the Debtor's Business Judgment**

18.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the Court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. §365(a). Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See Orion Pictures Corp. v. Showtime Networks Inc. (In re: Orion Pictures Corp.)* 4 F.3d 1095, 1099 (2d Cir. 1993) ("A bankruptcy court reviewing a trustee's or debtor in possession's decision to assume or reject an executory contract should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it.") *See also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re: Gucci*, 193 B.R. 411, 415 (SDNY 1996).

19.     Based on its negotiations with the Buyer, a key component of the sale of the Assets is the assumption and assignment to the Buyer of the Lease.

Upon information and belief, the Landlord consents to the assumption pursuant to the terms of the APA by the Debtor and assignment to the Buyer.

**D.    The Debtor has Authority to Assume and Assign the Lease**

20.    Bankruptcy Code section 365(b) and (f) sets forth the following requirements that a debtor in possession must satisfy before it may assume an executor contract or unexpired lease:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default …;
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract …, for any actual pecuniary loss to such party resulting from such default; and
> (C)  provides adequate assurance of future performance under such contract or lease.
>
> \*        \*        \*
>
> (f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if –
> (A)  the trustee assumes such contract or lease in accordance with the provisions of this section; and
> (B)  adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

U.S.C. § 365(b)(1), (f)(2); *see also, In re ANC Rental Corp., Inc.*, 277 B.R. 226, 238 (Bankr. D. Del. 2002) ("Having met the threshold requirement of a sound business purpose, the Debtor must also cure any existing default and provide adequate assurance of future performance of the assigned contracts.").

21.    Section 365 of the Bankruptcy Code authorizes the proposed assumption and assignment of the Lease, provided that any defaults thereunder are cured and adequate assurance of future performance is given.  *See generally In re Health Science Prods., Inc.*, 191 B.R. 895 (Bankr. N.D. Ala. 1995) (ability to make current payments on contract combined with projected future financial stability constituted "adequate assurance"; (*In re Mako,  Inc.*, 102 B.R. 818 (Bankr. E.D. Okla. 1988) (willingness and ability to cure defaults and projected cash flows sufficient to meet obligations under the contract met the "adequate  assurance" requirement).

22.    Because the term "adequate assurance of future performance" is not defined in the  Bankruptcy Code, court assesses the facts and circumstances of each case to determine whether there is adequate assurance. *See Chera v. 991 Blvd. Realty Corp. Shoes, Inc.*, 20 B.R. 55, 59 (Bankr. S.D.N.Y. 1982). Adequate assurance is not synonymous with complete and full assurance. *See In re M. Fine Lumber Co.*, 383 B.R. 565, 573 (Bankr. S.D.N.Y. 2008) ("A debtor need not prove it will thrive and make a profit, or provide an absolute guarantee of performance. It must simply appear that the rent will be paid and other lease obligations met.").

23.    With respect  to  the  issue  of  adequate  assurance  of  future performance necessary to approve the assumption and assignment of the Lease, upon information and belief, the landlord under the Lease has indicated that the Buyer would be an  acceptable  tenant  under  the  Lease  should  the  Sale

Motion be granted and the Debtor is authorized to assume and assign the Lease to the Buyer thus satisfying the adequate assurance requirement.

**E.** **The Sale of the Debtor's Assets Free and Clear of Liens, Claims and Encumbrances is Authorized by Section 363(f) of the Bankruptcy Code**

24.    Pursuant to section 363(f) of the Bankruptcy Code, the Debtor may sell the Assets free and clear of any interest in the property if any one of the following conditions is satisfied: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

25.    Section 363(f) of the Bankruptcy Code authorizes the trustee in certain circumstances to sell the estate's interest in property "free and clear of any interest in such property of an entity other than the estate." "Interests in property" as used in section 363(f) include "claims" that arise from the assets being sold. *In re Chrysler LLC,* 576 F.3d 108, 126 (2d Cir.2009), *granting cert. & vacating judgment, Indiana State Police Pension Trust v. Chrysler LLC,* 558 U.S. 1087 (2009); *In re Trans World Airlines, Inc.,* 322 F.3d 283, 289–90 (3d Cir. 2003). Section 363(f) has been interpreted to authorize the bankruptcy court to grant *in personam* relief, similar to the discharge under Bankruptcy Code § 1141(d), that exonerates the buyer from successor liability. *Motors Liquidation,* 428 B.R. at 57–59.

26.    Courts have noted that extending the "free and clear" provisions to claims stemming from successor liability preserves the priority scheme of the Bankruptcy Code and the principle of equality of distribution by preventing a plaintiff from asserting *in personam* successor liability against the buyer while leaving other creditors to satisfy their claims from the proceeds of the asset sale. *Douglas v. Stamco,* 363 Fed.Appx. 100, 102 (2d Cir.2010); *Trans World Airlines,* 322 F.3d at 292; *In re Grumman Olson Industries, Inc.*, 445 B.R. 243, 249 (Bankr. S.D.N.Y. 2011).    Additionally, extending the "free and clear" provisions to protect purchasers of bankruptcy assets from successor liability maximizes the value of the assets that are sold.    *Douglas,* 363 Fed.Appx. at 102–03 ("[T]o the extent that the 'free and clear' nature of the sale (as provided for in the Asset Purchase Agreement ('APA') and § 363(f) was a crucial inducement in the sale's successful transaction, it is evident that the potential chilling effect of allowing a tort claim subsequent to the sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors.") *In re Grumman Olson Industries, Inc.*, 445 B.R. at 250.

27.    Upon information and belief, the Debtor has no claims against it whereby the claimant could not be compelled "to accept a monetary satisfaction of its interest."  11 U.S.C. § 363(f)(5).  Accordingly, the standard for transferring the property pursuant to section 363(f) free and clear of all liens, claims and encumbrances is met.

**F.**     **Request for Waiver of the Stay**

28.     The Debtor requests a waiver of any stay of the effectiveness of the order approving the relief requested in this Sale Motion. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Due to the need to obtain the Initial Sale Proceeds to satisfy the Debtor's obligations under the Lease, the Debtor requests a waiver of the 14-day stay pursuant to 6004(h). Accordingly, the Debtor submits that more than ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## NOTICE

29.     Notice of this Sale Motion has been provided to: (a) the U.S. Trustee; (b) the Buyer and its counsel; (c) all creditors and interested parties in this case; and (d) all parties that have filed and served, pursuant to Bankruptcy Rule 2002, a Notice of Appearance in this case. In light of the nature of the relief requested, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

30.     No previous request for the relief sought in this Sale Motion has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested in this Sale Motion and such other and further relief as may be just and proper.

Dated: New York, New York
        January 23, 2019

                                    **Law Offices of Gabriel Del Virginia**
                                    *Proposed Attorneys for the Debtor*
                                    *and Debtor in Possession*
                                    By:___/s/ *Gabriel Del Virginia*_____
                                         Gabriel Del Virginia
                                         30 Wall Street, 12th Floor
                                         New York, New York 10005
                                         Telephone: 212-371-5478
                                         Facsimile: 212-371-0460
                                         Email: gabriel.delvirginia@verizon.net

**EXHIBIT A**

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**In re**

**EDWARD M. YAMBO MD, PC,**                    **Chapter 11**

            **Debtor.**                    **Case No. 18-74496 (AST)**

-------------------------------------------------------------X

**ORDER PURSUANT TO SECTIONS 105(a), 363(b), (f) AND (m) AND 365 OF THE BANKRUPTCY CODE AND RULES 6004 AND 6006 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE: (I) APPROVING THE SALE OF CERTAIN ASSETS OF THE DEBTOR FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND APPROVING THE ASSOCIATED ASSET PURCHASE AGREEMENT; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE DEBTOR'S NON-RESIDENTIAL REAL PROPERTY LEASE; AND, (III) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion")[2] of Edward M. Yambo MD, PC (the "Debtor" or the "Seller") by and through its counsel, the Law Offices of Gabriel Del Virginia, for the entry of an Order (the "Sale Order"), pursuant to sections 105(a), 363(b), (f) and (m), and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing and approving the sale (the "Sale") of certain of the Debtor's assets (the "Assets") free and clear of all liens, claims and encumbrances as described in the Asset Purchase Agreement (the "APA") annexed to the Sale Motion as **Exhibit B** to Caremed Primary and Urgent Care, P.C. (the "Buyer"); (ii) authorizing and approving the assumption and assignment of the Debtor's interest in its lease dated September 24, 2014 (as amended, the "Lease") of non-residential real property located at 41 Brentwood

---

[2] Capitalized terms not otherwise defined herein are ascribed the meaning provided in the Sale Motion.

Road, Bay Shore, New York 11706 (the "Premises"), pursuant to section 365 of the Bankruptcy Code in accordance with the APA; and, (iii) granting related relief; and due and sufficient notice of the Sale Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and upon the record of the hearing held by the Court on January __, 2019, on the Sale Motion; it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

### THE COURT FINDS AND DETERMINES THAT:

A.    Jurisdiction and Venue. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B.    Statutory predicates. The statutory predicates for the relief sought in the Motion and the basis for the approvals and authorizations contained in this Sale Order are Bankruptcy Code sections 105(a), 363(b), (f) and (m), and 365(a), and Bankruptcy Rules 2002, 3012 and 6004 and 6006.

C.    Notice. Due, proper, timely, adequate and sufficient notice of the Sale Motion and the relief requested therein, the Hearing, and the Sale described in the APA has been provided in accordance with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2) and 9006, and Local Rule 9077-1(c), and such notice was good and sufficient, and appropriate under the particular circumstances. No

other or further notice of the Motion, the relief requested therein and all matters relating thereto, the Hearing, or entry of this Sale Order is or shall be required.

D.    <u>Opportunity to Object.</u> A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons and entities.

E.    <u>Marketing Process.</u> The marketing efforts implemented by the Debtor were fair, proper, and reasonably calculated to result in the best value received for the Assets.

F.    <u>Business Justification.</u> The Debtor has articulated good, sufficient, and sound business reasons for consummating the APA, for the sale of the Assets, and it is a reasonable exercise of the Debtor's business judgment to consummate the transactions contemplated by the APA, including the assumption of the Debtor's interest in the Premises in accordance with the APA.

G.    <u>Private Sale is Warranted.</u> The Debtor has demonstrated that the private sale of the Assets to the Buyer is appropriate, as the Purchase Price is the highest and best offer for the Assets that the Debtor has received or likely will receive from any purchaser qualified to purchase and run the Assets.

H.    <u>No Good Faith Deposit.</u> Due to the type of business, and the necessary approvals required of any potential purchaser, the Debtor had a very limited market in which to market the Assets.  As a result of the limited potential purchaser market, the Debtor was unable to obtain higher or better offer from any other potential purchaser willing to provide a good faith deposit.

I.    <u>Best Interests.</u> Approval of the APA and the consummation of the Sale are in the best interests of the Debtor, its estate, its creditors, and other parties in interest.

J.    <u>Best Offer.</u> The Purchase Price to be paid by the Buyer pursuant to the APA is fair consideration and constitutes reasonably equivalent value for the Assets under the circumstances, as determined by the Debtor's marketing efforts and knowledge of the industry and the Assets being sold.

K.    <u>Arm's Length Transaction.</u> The APA was negotiated, proposed, and entered into by the Debtor and the Buyer without collusion, in good faith, and from arm's length bargaining positions.  The Buyer is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither the Debtor nor the Buyer has engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

L.    <u>Good Faith.</u> The Buyer is a good faith purchaser of the Assets within the meaning of section 363(m) of the Bankruptcy Code and, therefore, is entitled to all of the protections afforded thereby.  The Buyer has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Buyer in no way induced or caused the chapter 11 filing of the Debtor; (ii) the Buyer has recognized that the Debtor was free to deal with any other party interested in acquiring the Assets; and (iii) the Buyer has disclosed all payments to be made to it pursuant to the APA or other arrangements entered into by the Buyer in connection with the Sale.

M.    <u>Free and Clear.</u> The Assets constitute property of the Debtor's estate. The transfer of the Assets to the Buyer will be a legal, valid, binding and effective transfer of the Assets, and will vest the Buyer with all right, title, and interest of the Debtor in and to the Assets free and clear of any and all liens, claims (as such term is defined in section 101(5) of the Bankruptcy Code), including but not limited to claims resulting from transfer of the Assets and claims based on any theory of successor liability, encumbrances, mortgages, pledges, security interests, equity security interests, interests of any kind or nature, charges, actions, title defects, taxes (including liens for taxes), equitable interests, restrictions on transfer, options, conditional sale or other title retention devices or restrictions on the creation of any of the foregoing, whether relating to the Debtor or the Assets, of any kind or nature, whether or not asserted, known or unknown, whether relating to any property or the right or the income or profits therefrom and except as otherwise specifically provided in the APA.  Except as specifically provided in the APA, the Buyer shall have no liability for any claims against the Debtor or its estate or any liabilities or obligations of the Debtor or its estate.  Accordingly, the Debtor may sell the Assets free and clear of any and all liens, claims and encumbrances, and adverse claims, except as provided in the APA, because one or more of the standards set forth in sections 363(f)(1) – 363(f)(5) of the Bankruptcy Code has been satisfied with regard to each such lien, claim and encumbrance or adverse claim. Each person or entity with any lien, claim or encumbrance in the Assets: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is

deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such liens, claims or encumbrances; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those non-debtor parties with liens, claims and encumbrances in or with respect to the Assets who did not object, or who withdrew their objections to the Sale or the Sale Motion are deemed to have consented to the sale of the Assets free and clear of those non-debtor parties' interests in the Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

N.    <u>Assumption/Assignment of Lease.</u>  The Debtor has met all requirements of section 365(b) of the Bankruptcy Code for the Lease.  The Lease identified in the APA is an unexpired lease of non-residential real property capable of being assumed and assigned pursuant to section 365 of the Bankruptcy Code. The Lease is being transferred to the Buyer, pursuant to the terms of the APA, free and clear of all liens, claims, and encumbrances against the Debtor.  The Buyer has provided adequate assurance of its future performance under the Lease within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Lease to be assumed and assigned shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the Lease or other restriction prohibiting assignment or transfer of the Lease and pursuant to § 365(k) of the Bankruptcy Code.  Assignment of the Lease is a material term of the Buyer's

agreement to purchase the Assets. The Landlord has consented to the assignment of the Lease to the Buyer.

O.    <u>Avoidance and Successor Liability.</u> The transfer of the Assets to the Buyer shall not result in the Buyer having any liability or responsibility: (i) for any liens, claims or encumbrances against the Debtor or against any insider of the Debtor; (ii) for the satisfaction, in any manner, whether at law, or in equity, whether by payment, setoff or otherwise, directly or indirectly, of any liens, claims or encumbrances; or (iii) to third parties or the Debtor except as otherwise provided in the APA. Without limiting the effect or scope of the foregoing, the transfer of the Assets from the Debtor to the Buyer does not and will not subject the Buyer or its affiliates, successors or assigns to any liability whatsoever for any liens, claims or encumbrances against the Debtor or the Debtor's interests in the Assets by reason of the operation of the Debtor's Assets prior to the closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee, vicarious liability or similar theories. The Buyer is not a continuation of the Debtor or its estate and there is no continuity between the Buyer and the Debtor. Nothing in this Sale Order shall be interpreted to deem, or does deem, the Buyer as the successor to the Debtor under any state law successor liability doctrine with respect to any liabilities under environmental or other laws.

P.    <u>Compliance with Non-Bankruptcy Law.</u> In satisfaction of sections 363(d) and 541(f) of the Bankruptcy Code, the transfer of the Assets as contemplated by the Sale complies with applicable non-bankruptcy law governing such a transfer.

Q.    <u>WAIVER OF STAY UNDER BANKRUPTCY RULES 6004(h) AND 6006(d).</u> The relief that the Debtor seeks in the Sale Motion is necessary for the Debtor to preserve value for its estate.  Thus, the waiver of the stay pursuant to Bankruptcy Rules 6004(h) and 6006(d) is warranted.

R.    <u>Legal and Factual Bases.</u> The legal and factual bases set forth in the Sale Motion and at the Hearing establish just cause for the relief granted herein.

NOW, THEREFORE, IT IS ORDERED AND ADJUDGED THAT:

1.    The Sale Motion is GRANTED, as further described herein.

2.    <u>Objections.</u> All objections to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled on the merits and denied.

3.    <u>Sale Approval.</u> The Sale and all of the terms, conditions and transactions contemplated by the APA, including but not limited to the Amended Lease and the APA, are hereby authorized and approved pursuant to section 363 of the Bankruptcy Code.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized to consummate the Sale pursuant to and in accordance with the terms and conditions of the APA.  The Debtor is authorized to execute and deliver, and empowered to perform under, consummate, and implement the APA,

together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and effectuate the provisions of this Sale Order and the transactions approved hereby, and to take all further actions as may be requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring the Assets to the Buyer or reducing to possession, the Lease, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.  The failure to specifically include any particular provision of the APA in this Sale Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the APA and each and every provision, term and condition thereof be authorized and approved in their entirety; provided, however, that any inconsistency between the terms of the APA (as it may be amended) and the terms of this Sale Order, the terms of this Sale Order shall govern.

4.      Transfer of the Assets. As of the Closing of the Sale, the transactions contemplated by the APA shall effect a legal, valid, enforceable, and effective sale and transfer of the Assets to the Buyer, and shall vest the Buyer with all right, title, and interest of the Debtor in and to the Assets.

5.      Free and Clear. Except as provided in the APA, the transfer of the Assets shall vest the Buyer with all right, title, and interest of the Debtor in the Assets, pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all liens, claims and encumbrances, whether arising by statute or otherwise and whether arising before or after the commencement of this Bankruptcy Case,

whether known or unknown, including, but not limited to, all liens, claims and encumbrances of, or asserted by, any of the creditors, vendors, employees, suppliers, or lessors of the Debtor, or any other third party.  Any and all such liens, claims and encumbrances shall attach to the net proceeds of the Sale with the same priority, validity, force, and effect as they now have against the Assets.  Except as provided for in the APA, the Buyer shall not be liable (as successor entity or otherwise) for any liens, claims and encumbrances, including without limitation, statutory claims, that any of the foregoing parties or any other third party may have against the Debtor.  All persons and entities asserting or holding any liens, claims and encumbrances in or with respect to the Debtor (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), howsoever arising, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims and encumbrances against the Buyer.  Each and every federal, state, and local governmental agency, recording office or department and all other parties, persons or entities is hereby directed to accept this Sale Order for recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the Assets, including but not limited to the Lease, conveyed by the Debtor to the Buyer.

6.     <u>Surrender of Assets.</u> All entities who are presently, or who as of the Closing may be, in possession of some or all of the Assets, including but not limited to the Lease, hereby are directed to surrender possession of such Assets to the Buyer as of the Closing.

7.    <u>Good Faith.</u>  The Sale has been undertaken by the Debtor and the Buyer at arm's length and without collusion, and the Buyer will acquire the Asset pursuant to the APA in good faith, under section 363(m) of the Bankruptcy Code, and is, and shall be, entitled to all of the protections in accordance therewith.  The consideration provided by the Buyer for the Assets under the APA is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

8.    <u>Required Permits.</u> The Debtor is hereby authorized and directed to assign all state and federal licenses and permits used in connection with the Assets that are capable of transfer to the Buyer in accordance with the terms of the APA.

9.    <u>Release of Liens.</u> Subject to the occurrence of the Closing, this Sale Order is and shall be effective as a determination that all liens, claims and encumbrances of any kind or nature whatsoever existing as to the Debtor or the Assets prior to the date of the Closing shall be, and are, without further action by any person or entity, unconditionally released, discharged and terminated as to the Assets, the Debtor's interests in the Assets, and the Buyer as of the date of the Closing.  All persons or entities possessing any liens, claims and encumbrances with respect to the Debtor's interests in the Assets shall deliver to the Debtor and the Buyer, at the Closing in proper form for filing and executed by the appropriate person or persons, or entity or entities, termination statements, instruments of satisfaction, and/or releases of all such liens, claims and encumbrances which such person or entity has with respect to the Assets.

10.  <u>Use of Proceeds.</u>  The Sale Proceeds shall be used by the Seller in compliance with the Bankruptcy Code and any other orders of the Bankruptcy Court, including the payment of Chapter 11 administrative obligations under any Plan and Confirmation Order (if applicable) and any cure obligations under any executory contracts being assumed and assigned by the Seller to the Buyer.

11.  <u>Authorization to Release Liens, Claims and Encumbrances.</u>  If any person or entity shall have failed to deliver such termination statements, instruments of satisfaction, and/or releases at Closing in accordance with paragraph 9 above, then the Debtor and Buyer shall each be authorized to execute any such termination statements, instruments of satisfaction, and/or releases on behalf of such person or entity, evidencing the release by such person or entity of its liens, claims and encumbrances on the Assets as of the date of the Closing.

12.  <u>Assumption and Assignment of Lease.</u>  The Debtor is hereby authorized to assume the Lease and assign it to the Buyer pursuant to section 365 of the Bankruptcy Code.  The Buyer's assumption of the Lease is subject to the Lease attached to the APA and this Order.  Notwithstanding anything to the contrary in this Sale Order, the Buyer's assumption of the Lease is expressly conditioned upon: (i) its delivery of executed guaranties of: (A) Faiza Ali, M.D and (B) CareMed LLC, in each case in form and substance acceptable to the landlord under the Lease (the "<u>Landlord</u>"); (ii) the payment of December 2018 rent; (iii) the timely payment of January 2019 rent; and (iv) the timely and complete performance by Tenant of all of the tenant's obligations under the Lease from and after the date

of this Order (collectively the "<u>Lease Assumption Conditions</u>").  The Buyer shall use its best efforts to cause each of the Lease Assumption Conditions to occur and shall be deemed to have not taken possession of the Premises until each of the Lease Assumption Conditions have been satisfied.  Upon entry of this Sale Order and the completion of each of the Lease Assumption Conditions, the Lease shall be deemed assigned to the Buyer without further act by any party and the Lease shall be deemed amended to refer to the Buyer as tenant thereunder.  Upon the Debtor's assignment of the Lease to the Buyer under the provisions of this Sale Order, and the completion of each of the Lease Assumption Conditions: (i) the Landlord shall be deemed to have waived any default arising out of the Debtor's actions or inactions prior to the date of the completion of each of the Lease Assumption Conditions, and (ii) the Landlord shall not be permitted to declare a default thereunder or otherwise take action against the Buyer as a result of the Debtor's financial condition, bankruptcy or failure of the Debtor to perform any of its obligations under the Lease as it relates to the assignment of such contract to the Buyer.  Any provision that prohibits or conditions an assignment of the Lease or that allows the Landlord to terminate, recapture, impose any penalty, condition on renewal or extension, modify any term or condition solely on account of such assignment, constitutes an unenforceable anti-assignment provision in connection with the Sale to the Buyer that is void and of no force and effect solely as to the Sale.  For the avoidance of doubt, the Buyer assumes the Lease *cum onere* and without modification of any kind, except as otherwise agreed by the Landlord in writing in duly-authorized and

fully-executed amendment thereto. Notwithstanding the foregoing or any provision to the contrary in the Lease, the Landlord shall have the option to terminate the Lease if the Landlord and the Buyer are unable to negotiate a new five-year lease (a "New Lease") on or before February 1, 2019.  For the avoidance of doubt, a New Lease shall contain, at a minimum, the following terms and conditions: (i) monthly rent in the amount of $6,340.41 through August 31, 2019; (ii) a five-year extension, beginning on September 1, 2019 and ending on August 31, 2024, with the monthly rent amount to increase 3% each new lease year, beginning on September 1, 2019, and continuing each September 1 for each year thereafter until September 1, 2023; (iii) the same terms and conditions contained in the Lease, including, without limitation provisions for the payment of taxes, that the Premises is leased "as is", and any improvements on the Premises are the tenant's responsibility and must be acceptable to the Landlord, (iv) that the New Lease shall be guaranteed by all major equity owners of the Tenant and each of the individuals and entities identified in the Lease Assumption Conditions; and (v) such other terms and conditions as may be agreed to by Landlord and Buyer.

13.    <u>Transfer of Books and Records.</u>  The Debtor is authorized to transfer books and records to the Buyer but must retain, or have reasonable access to, its books and records to enable it to continue to administer this case in compliance with its obligations under the Bankruptcy Code.

14.    <u>WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h) and 6006(d).</u> Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order

shall be effective and enforceable immediately upon entry. The Court waives the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d), as the exigent nature of the relief sought herein justifies immediate relief.

15.     <u>Binding Effect of Sale Order.</u> This Sale Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets.

16.     <u>Binding on Successors and Assigns</u>. The terms and provisions of the APA and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, the Buyer, and their respective affiliates, successors and assigns and any affected third parties including, but not limited to, all persons asserting any Claim against the Debtor or the Assets to be sold to the Buyer, notwithstanding any subsequent appointment of any trustee, responsible person, estate administrator, representative or similar person (a "<u>Responsible Person</u>") for or in connection with the Debtor's estate or affairs in this case or in any subsequent cases under the Bankruptcy Code involving the Debtor, as to which

Responsible Person(s) such terms and provisions likewise shall be binding in all respects.

17.    <u>Modifications.</u> The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

18.    <u>Non-Severability.</u> The provisions of this Sale Order are non-severable and mutually dependent.

19.    <u>No Successor Liability.</u> The transfer of the Assets to the Buyer shall not result in any successor, derivative or vicarious liability or any kind or character, including, but not limited to federal, state or other tax liabilities, pension liabilities, or liabilities based on any theory of successor or transferee liability, labor law, alter ego, continuity or enterprise, mere continuation, *de facto* merger or substantial continuity theories, including but not limited to any liability or obligation of any kind including as a successor to the Seller, including an express release from liability for any of the Seller's environmental obligations and pending or threatened environmental claims and/or Internal Revenue Service claims against the Seller, any obligation under any collective bargaining agreement and obligations under any employer pension or employee health or benefit plan of the Seller, or any obligation relating to the Seller's liabilities under Medicare or Medicaid.

20. <u>Retention of Jurisdiction.</u> This Court shall retain jurisdiction over all matters pertaining to the relief granted herein, including to interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, and to adjudicate any dispute relating to the Sale of the Assets or the proceeds thereof.

21. Headings are included in this Sale Order for ease of reference only.

## EXHIBIT B

**ASSET PURCHASE AGREEMENT**

## Agreement of Purchase and Sale of Medical Practice Assets

This Agreement and BILL OF SALE of Purchase and Sale of Medical Practice Assets effective on the 20th day of January 2019, (hereinater "Agreement"), is made by and among Caremed Primary and Urgent Care PC, located at 266 Middle Country Road, Coram NY 11727 (hereinater as "Buyer" or "Purchaser"), and Edwardo M. Yambo MD P.C. ("P.C."), Dr Edwardo Yambo MD, located at 41 Brentwood Road, Bay Shore, New York  11706 (hereinater the "Seller").

### W I T N E S S E T H:

**WHEREAS**, the Seller owns and operates a private medical practice which is located at 41 Brentwood Road, Bay Shore, New York  11706 (the "Bayshore Office" or "Office"); and

**WHEREAS,** P.C. is operating as a debtor-in-possession under chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York (the "Court") under Case No. 18-74496 (the "Ch. 11 Case"); and

**WHEREAS**, the Seller desires to sell and otherwise transfer to the Buyer certain assets, consisting of the private medical practice located at 41 Brentwood Road, Bay Shore, New York  11706; and to operate a similar primary care medical practice at the location occupied by the Seller, for the benefit of the Buyer and the existing and future patients of the Practice; the assets to be sold to Buyer including the furniture, equipment, good will, patient lists and assignment of existing lease without undue burden to the Buyer. as set forth below of this Agreement as related to the Bayshore Office;  and

**WHEREAS**, the Buyer desires to purchase and otherwise take custody of said assets upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

- Assets Being Sold

    • The Seller hereby sells and transfers to the Buyer, and the Buyer hereby purchases from the Seller, certain assets related to the Bayshore Office (collectively, the "Assets"), upon the terms and conditions set forth herein, including the following:

        • all of the patient lists maintained by the Seller and its employees at the Office. A true and accurate list of all the patients to be transferred to Buyer is attached as _____ Exhibit "A" for the purposes of identification of the patient list, not intended for the purposes to stand guardian

1

of said medical records, nor to take physical or virtual possession of such medical records;

• transfer of all of the patient charts and records maintained by the Seller and its employees at the Office;

• the following telephone and facsimile numbers utilized by the Seller:

• (631) 968-0800 and Fax (631) 665-0816;

• all of the furniture, equipment and supplies owned by the Seller at the Bayshore Office, as more specifically set forth in Exhibit "B" annexed hereto;

• The Lease Agreement annexed hereto as Exhibit "D"; and

• All office related software and transferable and applicable licenses, except medical practice license in the name of Seller, Good Will, Covenant not to compete, Supplies and instruments.

• The Parties acknowledge that, except as otherwise expressly set forth herein, the Buyer is not purchasing or assuming: (i) any of the liabilities of the Seller; (ii) those items which are expressly excluded from the Assets as more specifically set forth in Exhibit "B" annexed hereto, if any; and (iii) the accounts receivable arising from services performed by the Seller and its employees and independent contractors prior to the Closing Date.

• Purchase Price

• In consideration of the Seller's sale and transfer to the Buyer of the Assets, the Buyer hereby agrees to pay the Seller the amount of Two Hundred and Fifty Thousand Dollars ($250,000) (the "Purchase Price"), payable as follows:

• To Edwardo M. Yambo MD PC, Two Hundred sixty five thousand $215,000.00

• Seventy-five thousand dollars ($75,000.00) by Certified Check on the Closing Date.

• One hundred forty thousand dollars ($140,000.00) will be paid in 35 monthly installments of $4,000 in first week of every calendar month.

- To PracticePro ( Billing Company holding Electronic Patient Record)

    Thirty-Five Thousand dollars ($35,000.00) by Certified Check.

- Broker's Fee

    Each Party hereto acknowledges that no person or entity has acted as a broker in connection with this Agreement or the transactions contemplated hereby and that no finder's fee, broker's commission or similar charge is owed to any such person or entity. In the event any such claim is made by a broker on account of the actions of any Party, then such responsible Party shall indemnify and hold the other Party harmless from and against any such claim.

- Closing and Court Approval

    • The Closing of the sale and purchase hereunder shall occur in two stages Closing Date and Effective Date as follows:

    > • Closing Date (hereinafter the "Closing Date") will is when the sale and purchase of the Assets pursuant to this Agreement will be completed transferring the legal ownership of those rights to the Buyer, this will happen upon the execution of this Agreement;

    > • The Effective Date (hereinafter the "Effective Date"), will be the date on which the Buyer will take possession of the Assets pursuant to this Agreement, the Effective Date will be on or about the Closing Date.

    • Upon the Closing Date, the Seller shall execute and deliver to the Buyer: (i) a bill of sale for the Assets being purchased hereunder in the form annexed hereto as Exhibit "C"; (ii) all of the patient records and charts maintained by the Seller annexed hereto as Exhibit "A"; (iii) an assignment of all rights which the Seller has in the telephone and facsimile numbers specified above; and (iv) a list of all of the Seller's patients (including their phone numbers and addresses); (v) other items referred to hereinabove under Section 1;  and (vi) an assignment of existing lease without undue burden to the Buyer.

    • This Agreement and the transactions contemplated hereunder are subject to Court approval and entry of a final order, and the Closing Date shall not occur unless and until such approval is so ordered.

- Representations and Warranties

    • The Seller hereby represents and warrants to the Buyer, which representations and warranties shall be true and correct as of the Closing Date

3

and shall survive the Closing Date, that:

• <u>Ownership of the P.C.</u>.   Seller is the lawful owner of and in actual possession of the Assets.

• <u>Authority and Standing</u>.  The Seller has all requisite power and authority to enter into and consummate this Agreement and the transactions contemplated herein.  This Agreement is valid, binding, and legally enforceable against the Seller in accordance with its terms. The execution and performance of this Agreement by the Seller will not violate any provision of law, will not (with or without the giving of notice and/or the passage of time) conflict with or result in any breach of any of the terms or conditions of, or constitute a default under, any indenture, mortgage, agreement or other instrument to which the Seller is a party or by which the Seller is bound, and will not result in the creation of any lien, charge or encumbrance upon any of the Assets.

• <u>Marketable Title</u>.  The Seller has good and marketable title to the Assets being sold and transferred hereunder and all of such Assets are free and clear of all liens, mortgages, pledges, security interests, conditional sale agreements, encumbrances and charges whatsoever, and no third party person or entity has any ownership interest in or any rights of any kind in or to any of the Assets.

• <u>Employment/Independent Contractor/Agent Relations</u>.  There are no disputes ongoing or known between the Seller and any of its employees, independent contractors or agents and all compensation and fringe benefits owed by the Seller to its employees, independent contractors and/or agents have been paid by the Seller or will be paid by the Seller in full by the Closing Date or as soon as possible thereafter.  Seller warrants that the employment contracts for current employees at Seller's Bayshore Office as of the Closing Date are attached as <u>Exhibit "E"</u>.

• <u>Patient Lists; Records</u>.  The patient lists (including addresses and phone numbers) and records being purchased and/or transferred hereunder are true and accurate and have not been copied, disclosed or otherwise revealed to any third parties as of the Closing Date, other than as required by law or regulation, and the Seller shall not maintain any such information or records (or copies thereof) and has not and shall not encourage or otherwise assist any third party in doing so. The Parties acknowledge and agree that the Buyer is relying upon the foregoing representation and warranty upon entering into this Agreement.

• <u>Equipment</u>.   As of the Closing Date, the equipment sold hereunder shall be in good working condition.

• The Buyer hereby represents and warrants to the Seller, which

4

representations and warranties shall be true and correct as of the Closing Date and shall survive the Closing Date, that: (i) the Buyer has all requisite power and authority to enter into and consummate this Agreement; (ii) this Agreement is valid, binding, and legally enforceable against the Buyer in accordance with its terms; (iii) the execution and performance of this Agreement by the Buyer will not violate any provision of law, will not (with or without the giving of notice and/or the passage of time) conflict with or result in any breach of any of the terms or conditions of, or constitute a default under any indenture, mortgage, agreement or other instrument to which the Buyer is a party or by which the Buyer is bound.

- Adjustments and Appropriations

  • All operating expenses of the Seller's Bay Shore Practice attributable to the period prior to Closing shall be paid by the Seller. All operating expenses of the Bay Shore Practice attributable to the period on and after Closing shall be borne by the Buyer.

  Should the patient volume reduce by more than 10% of the historical number of office visits which are 800 per month, the total price will be reduced proportionately to percentage patient volume decreased. In any event resulting closing of 41 Brentwood Rd, Bay Shore NY office, including but not limited to non-renewal of lease past the period of lease assumption and assignment, buyer will not held liable for balance of the Purchase price.

- Mutual Indemnity

  • The Buyer hereby agrees to indemnify, defend and hold harmless the Seller from and against any and all costs, liabilities, losses, damages and/or deficiencies arising or resulting from:

    • any and all: (A) misrepresentations or breaches of warranty hereunder on the part of the Buyer; (B) failures by the Buyer to perform or otherwise fulfill any undertaking or other agreement or obligation hereunder; (C) liabilities of the Buyer which may arise in connection with or are related to its provision of services at the Office from and after the Closing Date ; and (D) the payment or non-payment of taxes by the Buyer; and

    • any and all actions, suits, proceedings, claims, liabilities, demands, assessments, judgments, costs and expenses, including reasonable attorneys' fees, incident to the foregoing provisions.

  • The Seller hereby agrees to indemnify, defend and hold harmless the Buyer and its shareholders, officers, directors, successors and assigns from and against any and all costs, liabilities, losses, damages and/or deficiencies arising or resulting from:

5

• any and all: (A) misrepresentations or breaches of warranty hereunder on the part of the Seller; (B) failures by the Seller to perform or otherwise fulfill any undertaking or other agreement or obligation hereunder; and (C) all liabilities of the Seller, regardless of when such liabilities arose or are asserted, including, without limitation: (1) any liabilities which may have arisen in connection with or are related to the provision of services by the Seller and/or its employees and/or agents and/or the business and operation of the Bayshore Office; and (2) the payment or non-payment of franchise, payroll, withholding, Social Security, unemployment insurance, disability and other taxes, employee wages, third party audits, accounts payable or otherwise by the Seller; and

• any and all actions, suits, proceedings, claims, liabilities, demands, assessments, judgments, costs and expenses, including reasonable attorneys' fees, incident to the foregoing provisions.

(c)    This Section 9 shall survive the Closing Date.

• Medical Records

• The Buyer agrees to hold and maintain all patient records and charts transferred hereunder in accordance with applicable federal and New York State laws and regulations, and to make same available to Seller, upon reasonable notice, if access is required by it to respond to or defend against a malpractice action, third-party audit, or governmental inquiry/investigation (or promptly if requested in writing by a patient who is the subject of such records). The Buyer shall also provide reasonable access to the Seller as is reasonably necessary to assist the Seller in collecting its accounts receivable. A copy of the Medical Records Custody Agreement is annexed hereto as Exhibit "F".

• Entire Agreement. This Agreement is the entire agreement among the Parties concerning the subject matter hereof and supersedes all prior agreements, whether written or oral. It shall not be changed, except by a writing signed by all of the Parties hereto. All rights and remedies set forth in this Agreement shall be in addition to and not exclusive of any other rights or remedies now or hereafter existing at law or in equity.

• Savings Clause. If any provision of this Agreement or the application of any provision hereof to any person or circumstances is held to be legally invalid, inoperative or unenforceable, then the remainder of this Agreement shall not be affected unless the invalid provision substantially impairs the benefit of the remaining portions of this Agreement to the other Party.

• Waiver. No delay or failure to exercise any remedy or right occurring upon any default shall be construed as a waiver of such remedy or right, or an acquiescence in such default, nor shall it affect any subsequent default of the

same or a different nature.

• Counterparts. This Agreement may be executed in counterparts and each such counterpart, when taken together, shall constitute a single and binding agreement.

• Governing Law; Venue. This Agreement shall be governed by and construed in accordance with the laws of New York State, without giving effect to the rules of conflicts of law thereof. Each Party to this Agreement hereby agrees and consents that any legal action or proceedings with respect to this Agreement shall only be brought in the courts of New York State located in Suffolk County. By execution and delivery of this Agreement, each such Party hereby: (i) accepts the jurisdiction of the aforesaid courts; (ii) waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue set forth above; and (iii) further waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

• Legal Representation; No Party Considered Drafter.  Each Party to this Agreement acknowledges that it/she has been advised of its/her right to be represented by independent legal counsel of its/her own selection in connection with the negotiation, review and execution of this Agreement. No Party hereto shall be considered to be the drafter of this Agreement or any paragraph or term hereof and no presumption shall apply to any Party as the "drafter."

• Covenant Not To Compete.

• In exchange for the consideration set forth hereinabove SELLER in its corporate status and   Dr. Edwardo M. Yambo MD in his personal status agrees that it/he will not directly or indirectly engage in the practice of medicine other than employment with Buyer, only for our patient services, commencing on of the date of Close of Sale, within a radius 5 MILES of the subject SELLER'S Practice Assets for a period of Five (5) years. In addition, SELLER aggress not to solicit or treat any patients who have been, or are currently being treated with the SELLER'S practice, and SELLER further covenants that SELLER  will not, during the term of Covenant, directly   or indirectly include any former patients of SELLER's practice or the referring sources of SELLER's practice solicit or induce any of Practice's current employees to leave or change employment, and SELLER expressly agrees not to solicit, hire or provide employment for any of Practice's current employees, rehired by Purchaser, for the period of Three years

• Letters of Announcement and Introduction

SELLER agrees to cooperate with BUYER in sending letters of announcement and introduction that are mutually agreeable to the parties, to all referring sources and to parties of record active within Ten (10) days of Close of Sale.

(Costs incurred in sending such letter and announcements are to be borne by BUYER)

• Risk of Loss

It is understood by the parties that the risk of loss, injury or destruction of any and all assets transferred hereunder by any cause whatsoever, at all times subsequent to the Close of Sale as set forth in this contract, is assumed by the BUYER.

• Duty to Maintain Supplies

SELLER agrees to transfer all supplies on hand to BUYER on the Close of Sale as set forth in this contract. In addition, SELLER shall maintain the supply level as is normal and customary until the Close of Sale and will make best efforts to have such levels in place prior to close of sale.

• Accounts receivable.

Under no circumstances the buyer shall be responsible in any way to make any efforts to collect funds on behalf of the seller. Notwithstanding the foregoing, all receivables from dates of service prior to that of the closing are due to the Seller.

SELLER agrees that all remote connection, login and password information, if any, will be provided to BUYER upon the successful Close of Sale. SELLER further agrees that he will not access any practice computers, emails etc. upon the successful Close of Sale.

• SURVIVAL:

All of the representations given hereinabove by both the buyer and seller shall survive the closing.

• Amendment.

This Agreement shall not be amended, altered, or terminated except by a writing executed by each Party.

**SIGNATURE PAGE TO FOLLOW**

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

Seller:

Edwardo M. Yambo MD, P.C.
*Debtor-in-Possession*

By: _____

_____                    Edwardo M. Yambo MD P.C,

President

_____
Edwardo M. Yambo MD,
Individually

Buyer: _____

CareMed Primary and Urgent Care P.C

By: _____

_____                    Faiza Ali, M.D., President (not in individual

capacity)

9

EXHIBIT "A"

## PATIENT LIST

AVAILABLE UPON REQUEST

EXHIBIT "B"

## FURNITURE AND EQUIPMENT

13 Telephones
15 Computer Monitors and 13 CPUs, 2 Laptops
15 Keyboards , 8 Scanners
5 Printers 1 Kyocera FS-6525MFP Photo Copy Machine
1 Brother MFC-12750DW Fax Machine
1 Dell Unit for Security Cameras
2 Shredders and 1 Laminator
1 Large Freezer - Frigidaire (Lab) 1 Refrigerator/Freezer - Frigidaire (Lab)
1 Smaller Refrigerator/Freezer - Avanti (Lab) 1 Refrigerator/Free2er - Avanti (for Kitchen)
3 Executive Desks (1 L Shape w/wood file cabinet) 2 Floor Heaters 1 Copier Desk
3 Table Top Desks, 1 Glass Top Desk, 2 Folding Tables, 2 Small Storage Cabinets
4 Wooden Cabinets (exam rooms) 3 Four Drawer File Cabinets 4 Two Drawer File Cabinets
30 Reception Chairs 1 Executive Chair & 1 Bench Unit
4 Exam Tables, 8 Side Chairs, 4 Swivel Stools, 4 Step Stools, 4 scales
4 - Wall Equipment for Each Exam Room
1 Sterilizer 2 Lab Stools
2 Wall Thermometers
2 Rolling Blood Pressure Monitors
2 Printer  in Lab
1 Blood Spinner
6 Large File Cabinets

EXHIBIT "C"

## BILL OF SALE AND ASSIGNMENT

FOR VALUE RECEIVED, Edwardo M. Yambo MD P.C (the "Seller") does hereby sell, assign and transfer to CAREMED PRIMARY AND URGENT CARE PC (the "Buyer"), pursuant to that certain Asset Purchase Agreement, by and among Seller and Buyer, made on November 19th, 2018 (the "Asset Purchase Agreement"), certain Assets related to Seller's Bayshore Office as defined in the Asset Purchase Agreement.

IN WITNESS WHEREOF, Seller has executed and delivered this instrument to be effective as of December 1st, 2018.

Edwardo M. Yambo MD P.C

By:

Dr. Edwardo M. Yambo MD, President

12

EXHIBIT "D"

## LEASE AGREEMENT

(See attached)

AVAILABLE UPON REQUEST

EXHIBIT "E"

## EMPLOYEE CONTRACTS

None

14

EXHIBIT "F"

## MEDICAL RECORDS CUSTODY AGREEMENT

## MEDICAL RECORDS CUSTODY AGREEMENT

THIS MEDICAL RECORDS CUSTODY AGREEMENT (this "Agreement"), is made and entered into as of _VAN 15TH_, 2019 (the "Closing Date") by and between Caremed Primary and Urgent Care PC, located at 266 Middle Country Road, Coram NY 11727 (hereinater as "Buyer"), and Edwardo M. Yambo MD P.C. ("P.C."), Dr. Edwardo Yambo MD, located at 41 Brentwood Road, Bay Shore, New York 11706 (together with its designee(s) or successors, including any bankruptcy trustee or liquidating trustee, however denominated, the "Seller") (the Buyer and the Seller being hereinafter individually referred to as a "Party" and collectively referred to as the "Parties").

WHEREAS, the Buyer is purchasing certain assets of the Seller; and upon the closing ("Closing Date") of the Asset Purchase Agreement dated January __, 2019 ("APA"), the Parties desire to facilitate continuity of care for the P.C.'s current and former patients by having the Buyer take custody of such patients' electronically-stored medical records, on the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound hereby, agree as set forth below.

1. <u>Records.</u>    The term "<u>Records</u>," as used in this Agreement shall mean the electronic medical records of the P.C.

2. <u>Custodial Agreement.</u>    The Seller hereby appoints the Buyer, and the Buyer agrees to serve, as custodial agent of the Seller with respect to the maintenance and safekeeping of the Records and the provision of access to such records for patients and/or their new providers.  Commencing on the Closing Date, the Buyer shall maintain the Records as custodian for the Seller for the minimum period required by law (the "<u>Retention Period</u>").  During the Retention Period, the Buyer and Seller agree that:

   a. Seller shall notify all of Seller's patients, by first-class mail, signage at its facility and notation on its website, at least thirty (30) days in advance of the Closing Date, that it will no longer be providing care to patients after a date agreed upon by the Parties and subject to agreement by the NYS Department of Health.  With the notice sent to patients, Seller shall also notify patients that Buyer is maintaining custody of the Seller's medical records and provide instructions for patients to authorize transfer of their medical records to Buyer or to another provider.  Should Seller receive any authorizations from patients for release or transfer of medical records, Seller shall send a copy of such to Buyer.  Buyer shall comply with any authorization and only with respect to the specific Records

addressed in the authorization.

b. The Buyer shall retain copies of any Records transferred pursuant to **Section 2(a)** hereof. Buyer shall provide the Seller with information as to where Records were transferred upon request.

c. Prior to destroying or otherwise disposing of a Record or Records upon expiration of the Retention Period, the Buyer shall send to the Seller written notice (a "Buyer's Destruction Notice") of its intent to destroy or dispose of Records. Buyer's Destruction Notice shall provide the Seller with thirty (30) calendar days to respond ("Seller's Response Time") to the Buyer with the Seller's direction as to whether or not the Seller intends to take possession of all or any of the records in lieu of the destruction. Upon the expiration of the Seller's Response Time, the Seller shall either take possession of the Records or direct the Buyer to go forward with the destruction. If the Buyer does not receive a response from the Seller within the Seller's Response Time, the Buyer may proceed with the contemplated destruction.

d. The Buyer shall maintain the confidentiality of all of the Records for which it serves as custodian hereunder in accordance with all applicable laws and, to the extent applicable, the terms of the APA;

e. Upon the reasonable written request of the Seller, the Buyer shall provide the Seller with access to the Records pursuant to the terms of the APA;

f. The Buyer shall provide timely access to, and photocopies of, the Records to patients and their legal representatives or designees upon request;

g. Upon the expiration of the Retention Period in relation to Records, the Buyer shall provide a Buyer's Destruction Notice to the Seller.

3. Buyer's Use and Access to Records. If Records are transferred to the Buyer pursuant to patient authorization, the Buyer shall be entitled to access and use all Records for any legitimate business purpose of the Buyer, subject to applicable privacy or confidentiality laws and regulations, and shall no longer be required to maintain a copy of such Records pursuant to **paragraph 2(b)** herein. Until such time, Buyer shall access the Records only for payment or healthcare operations and only as necessary for such purposes.

4. Compliance with Process. Notwithstanding any other provision of this Agreement, the Buyer shall not be required to seek a protective order or any other form of relief with respect to any administrative or judicial process seeking the production of Records and shall be entitled to rely upon the lawfulness of any such process.

5. Indemnification.

a. <u>By the Buyer.</u>  The Buyer will indemnify  and hold the Seller and  its employees, agents and affiliates harmless from any and all claims, actions, liabilities and expenses (including costs of judgments, settlements, court costs and reasonable attorneys' fees, regardless of the outcome of such claim or action) caused by, resulting from or alleging the Buyer's negligence or intentional misconduct in the performance of its obligations under this Agreement causing damages to the Seller.

b. <u>By the Seller</u>.   The Seller will indemnify and hold the Buyer and its members, directors, officers, employees, agents and affiliates harmless from any and all claims, actions, liabilities and expenses (including costs of judgments, settlements, court costs and reasonable attorneys' fees, regardless of the outcome of such claim or action) caused by, resulting from or alleging the Seller's negligence or intentional misconduct causing damages to the Buyer.

c. Any claim for indemnification under this Agreement shall be handled in accordance with the indemnification procedures set forth in the APA. The indemnification obligations of the Parties set forth in this **Section 5** shall survive termination of this Agreement and continue for a period of six (6) years from the date of this Agreement.

6. <u>Term and Termination.</u>

a. <u>Term.</u>  This Agreement shall commence on  the  date  first written above and shall continue until the expiration of the Retention Period for all Records or as  sooner provided for herein.

b. <u>Termination by Consent</u>.  This Agreement may be terminated at any time upon written consent by both Parties specifying the effective date of termination.

c. <u>Termination for Breach</u>.  Either Party may terminate this Agreement if the other Party is in default or breach of any material term or condition hereof which default, breach or failure has been duly noticed and has not been cured within thirty (30) days of the date of receipt of a notice of breach or default by the Party to be so noticed.

7. <u>Effectiveness</u>.  Notwithstanding anything to the contrary herein, the Parties hereby acknowledge and agree that this Agreement and its terms, conditions, obligations and responsibilities in all respects shall be (i) subject to approval by the United States Bankruptcy Court for the Eastern District of New York in the Chapter 11 bankruptcy case of the Seller, and of no effect if not so approved, (ii) effective only upon and subject to the terms of the attached APA between Seller and Buyer, and (iii) effective only to the extent closing on the APA shall have occurred.

8. <u>Miscellaneous</u>.

a. <u>Notice</u>.  Any notice, demand or communication required, permitted, or desired to be given under this Agreement shall be communicated to the Party to receive the notice at the address for such Party specified in the first paragraph above.

b. <u>Assignability; Parties-in-Interest.</u>  This Agreement shall inure to the benefit of, and be binding upon, the Parties hereto and their respective successors and permitted assigns.  Neither this Agreement nor the obligations of any Party hereunder shall be assignable or transferable by such Party without the prior written consent of the other Parties hereto, which consent shall not be unreasonably withheld. This Agreement is for the sole and exclusive benefit of the Parties to this Agreement and their successors and assigns, and nothing in this Agreement is intended to confer, expressly or by implication, upon any other Person (as that term is defined in title 11 of the United States Code §§ 101 *et seq.*) any legal or equitable rights, remedies or claims under or by reason of this Agreement.

c. <u>Governing Law</u>. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to principles of conflicts of laws. Each Party agrees to the *in personam* jurisdiction of the state and federal courts resident in New York.

d. <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement may be executed and delivered by exchange of facsimile, JPEG, TIF, or PDF copies showing the signatures of the parties hereto, and those signatures need not be affixed to the same copy.  The facsimile, JPEG, TIF, or PDF copies showing the signatures of the Parties will constitute originally signed copies of the same Agreement requiring no further execution.    This Agreement shall become effective when each Party shall have received a counterpart signed by the other Party.

e. <u>Amendments and Waivers</u>. The Parties hereto may: (i) extend the time for the performance of any of the obligations  or other acts of the  Parties hereto; (ii) waive compliance with any of the covenants or agreements contained in this Agreement; or (iii) amend this Agreement, if and only, in the case of an extension or amendment, such action is set forth in a written agreement signed by all Parties, or, in the case of a waiver, if such waiver is signed by the Party against whom the waiver is to be effective.

f. <u>Severability</u>.  Any portion or provision of the Agreement that is determined to be invalid, illegal or unenforceable in  any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability, without affecting in any way the remaining portions or provisions hereof in such jurisdiction or, to the extent

permitted by law, rendering that or any other portion or provision of the Agreement invalid, illegal or unenforceable in any other jurisdiction. The Parties furthermore agree to execute and deliver such amendatory contractual provisions to accomplish lawfully as nearly as possible the goals and purposes of the provision so held to be invalid, illegal or unenforceable.

g. Complete Agreement. This Agreement and the documents delivered pursuant hereto or referred to herein contain the entire agreement between the Parties hereto with respect to the matters contemplated herein and supersede all previous negotiations, commitments and writings.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first above written.

CAREMED PRIMARY AND URGENT   EDWARDO M. YAMBO MD P.C.
CARE, P.C.

By: _____ FAIZA ALI _____ 1/15/18     By: Dr. Edwardo Yambo MD   1/16/18
Title: _____         Title: